UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS WRIGHT,                :        No. 3:23-CV-597
                             :
            Plaintiff        :        (Saporito, J.)
                             :
    v.                       :        (Caraballo, M.J.)
                             :
ELITE REVENUE SOLUTIONS, :
LLC, et al.,                 :
                             :
            Defendants       :

## REPORT & RECOMMENDATION

## I.    Introduction

Plaintiff Thomas Wright, proceeding pro se, commenced this
purported civil rights action against 17 private and public entities on
April 7, 2023.  Doc. 1.  On March 20, 2024, Wright lodged the live
Amended Complaint.  Doc. 11.  The pleading lists the First, Fourth,
Fifth, and Fourteenth Amendments of the United States Constitution
as the bases of this suit.  *Id.* at 1.

Most of the Defendants submitted motions to dismiss (Docs. 24,
44, 45, 53), arguing that Wright fails to articulate cognizable claims for
relief under 42 U.S.C. § 1983, and lacks standing.  Further, a review of
the Amended Complaint reveals another fatal flaw.  Namely, an

attachment to the pleading indicates that Wright seeks to subvert a

state tax judgment against Adolph Wright, his brother,[1] through this

action.  Thus, this suit, if allowed to proceed further, would violate the

*Rooker-Feldman* doctrine, which prohibits federal trial courts from

reviewing state judgments.

For the reasons set forth below, the undersigned recommends that

all defendants be dismissed without prejudice for lack of third-party

standing and subject matter jurisdiction.

## II.    <u>Background</u>

The precise nature of this action remains unclear due to the

Amended Complaint's general incoherency and incompleteness.[2]  The

undersigned, however, has interpreted the allegations to the extent

---

[1] Wright states that Adolph is his brother.  Doc. 11 at 2.  For clarity, Adolph Wright
will be referenced as "Adolph" and Thomas Wright as "Wright."

[2] The allegations in the Amended Complaint appear to have been cropped prior to
filing.  *Id.* at 1–5.  In a subsequent filing, Wright attached a document that
resembles but is different from the Amended Complaint.  Doc. 51 at 13–17.
Regardless, neither document comports with Federal Rule of Civil Procedure
8(a)(2).  *See* Fed. R. Civ. P. 8(a)(2) (establishing that a complaint "must" contain
"short and plain statement[s] of the claim showing that the pleader is entitled to
relief[.]").  Moreover, the Amended Complaint is signed by "H" (Doc. 11 at 5), an
individual who has no standing in this matter as a litigant or attorney, and whose
filings were previously stricken by the Court.  Doc. 19.  As Wright appears to have
signed the entirety of the amended complaint, following its exhibits, the Court will
nonetheless consider the pleading filed in his name.  Doc. 11 at 37.

possible, and in a light most favorable to Wright. *See Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017).

The pleading purports to present a takings action under the Fifth and Fourteenth Amendments of the United States Constitution.[3] *See* Doc. 11 at 1 (mentioning Fifth Amendment), 2 ("taking of property"), 4 ("property without notice or an opportunity to be heard"). The disputed property appears to have been occupied by Adolph until he was ejected from the land. Doc. 52 at 1 ("My brother's valiant attempt to preserve ownership of the property has been obviously futile with him being removed under the presence of armed Sheriffs."). Wright seems to claim that he, too, owned a legal interest in that property. Doc. 11 at 3 ("depriving Thomas Wright, adolph wright[,] and other heirs").

The Amended Complaint does not, however, state what legal interest is presently owned by Wright, who admits that he resides outside of Pennsylvania. *Id.* As the Court previously observed, Wright was, at one point, a "tenant[] in common," but "appears to have retained no ownership interest" in the disputed property. Doc. 38 at 3–4, 12.

---

[3] Wright's bases for invoking the First and Fourth Amendments, Doc. 1 at 1, remain a mystery.

The Amended Complaint appears to accuse several public and private parties of depriving Wright of his property rights. He accordingly demands monetary damages in the amount of "over 1 million dollars[,] as well as punitive damages[.]" Doc. 11 at 5.

The Amended Complaint names 13 governmental entities and individuals, who may be divided into three categories according to their affiliations. *Id.* at 1. The three groups are: (1) the Luzerne County Tax Claim Bureau and two affiliated individuals, Joan Hoggarth and James Haddock; (2) the Luzerne County Solicitor and Harry Skene (who is also identified as the Luzerne County Solicitor); and (3) the Luzerne County Council and some of its members, including Tim McGinley, Lee McDermott, Kendra Radle, David Pedri, Chris Perry, Sheila Saidman, and Robert Schnee.[4] *Id.*

Wright also names several private parties—Elite Revenue Solutions, LLC, or "Elite Revenue"; Samuel Falcone; David Keller; and Joseph Plummer—but his only cognizable premise against them seems to be that they were "acting and performing government functions." *Id.*

---

[4] The Amended Complaint identifies Perry, Saidman, and Schnee by last names only. But an entry of appearance on their behalf shows their first names as well. Doc. 26 at 1–2.

at 2. The motions and briefs submitted by these defendants provide additional insights into their connections to this matter. Elite Revenue claims that it is an "agent for the Luzerne County Tax Claim Bureau and is responsible for collecting real property taxes . . . ." Docs. 46 at 2; 47 at 2. Falcone is an attorney "for the Luzerne County Tax Claim Bureau through its agent, Elite Revenue . . . ." Doc. 46 at 2; 47 at 2. Keller alleges that he "purchased the property through a Sheriff sale," foreclosed on the property, received possession of that land, and ejected Adolph from the property. Doc. 54 at 2. Plummer has not appeared in this action.

Most of the defendants submitted motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), presenting two lines of arguments. Docs. 24, 44, 45, 53. The first, submitted by the Luzerne County Solicitor, the Luzerne County Council, and Keller, stresses the Amended Complaint's incomprehensiveness, and concludes that the pleading fails to state colorable claims for relief. Docs. 25 at 1–2; 54 at 1–3.[5] The second, articulated by Elite Revenue and the Luzerne County

---

[5] Keller also advises that he has never been served. Doc. 53 at 1.

Tax Claim Bureau, surmises that Wright lacks standing, as he has no discernible interest in the property. Docs. 46 at 6–7; 47 at 6–7.

In addition to these two arguments, the Amended Complaint betrays a fundamental flaw through an attachment—namely, an appellate brief filed with the Commonwealth Court of Pennsylvania on February 29, 2024. Doc. 11 at 19–36. The brief and a subsequent decision issued by the Commonwealth Court in the same appeal, *Commonwealth v. Wright*, 2024 WL 5195484 (Pa. Commw. Ct. 2024), indicate that Wright seeks to challenge state tax liens filed against Adolph for unpaid taxes. Doc. 11 at 28.

The brief provides a partial insight into the muddled history of the underlying state proceedings. According to the brief, this suit arises out of a state tax proceeding that commenced "[o]n June 16, 2021, when the [Pennsylvania] Department [of Revenue] filed a lien against [Adolph] for unpaid personal income taxes totaling $6,345.20." *Id.* Five months later, "[o]n November 12, 2021, the Department filed a separate lien against [Adolph] for unpaid realty transfer taxes totaling $6,372.78." *Id.* Following several years of litigation and appeals, the Commonwealth Court quashed Adolph's appeal on December 23, 2024.

Important to this Report and Recommendation is the Commonwealth Court's observation that "the Department filed a Certified Copy of Lien in the trial court," and that a "[j]udgment was entered in the same amount on June 16, 2021." *Wright*, 2024 WL 5195484, at *1 (citation omitted). The court also noted that "th[e] matter [wa]s rife with procedural errors because [Adolph] [wa]s attempting to convert th[e] lien proceeding into a challenge of the tax sale of the subject property." *Id.* at *2.

In sum, Wright seemingly complains about injuries caused to Adolph by a state tax judgment, which was issued about two years before this instant suit was filed. Wright appears to be prodding the Court into reviewing and even interfering with that judgment, as well as presenting his grievances against various state and nonstate entities for reasons that are largely unexplained.

## III. <u>Discussion</u>

The undersigned recommends that all defendants be dismissed without prejudice for three reasons. First, Wright lacks third-party standing to litigate this case. Second, this lawsuit runs afoul of the *Rooker-Feldman* doctrine. Third, Wright failed to serve the Amended

Complaint on two individual defendants within the period provided by Federal Rule of Civil Procedure 4(m).

## A.    Federal Jurisdiction

For purposes of this Report and Recommendation only, the undersigned assumes that Elite Revenue, Falcone, and Keller are state actors. The Amended Complaint merely asserts that these three private parties, along with Plummer, were "acting and performing governmental functions," Doc. 11 at 2, but lacks further allegations about how those unidentified activities constitute "exercise[s of] powers that are traditionally the *exclusive* prerogative of the state." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (emphasis in original) (quotation omitted) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982)). Nevertheless, construing the Amended Complaint in the light most favorable to Wright, the undersigned assumes that the pleading suffices. *See Kedra*, 876 F.3d at 434. Moreover, none of those defendants have asserted any challenge to Wright's Section 1983 claims premised on their statuses as private parties.

## 1.  *Lack of Standing*

Defendants Elite Revenue, Samuel Falcone, and the Luzerne County Tax Claim Bureau request dismissal premised on Wright's lack of standing to advance this lawsuit.  Docs. 44, 45.  Namely, they contend that Wright failed to allege that he holds an ownership interest in the property under dispute, or is an interested party in the underlying tax delinquencies.  Docs. 46 at 4–6, 47 at 4–6.  Wright does not offer any discernible contention otherwise in his opposition.  *See generally* Doc. 51.  That failure to establish third-party standing in his Amended Complaint is fatal to Wright's claims, against both the movants and other defendants.[6]

Article III of the Constitution of the United States confines federal jurisdiction to certain "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Therefore, "[f]ederal courts are courts of limited jurisdiction," wielding "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

---

[6] On August 13, 2024, Wright was ordered to serve the Amended Complaint on all defendants by September 3, 2024, and provide proof of service, accordingly.  Doc. 19. He subsequently provided proof of service for some defendants, but not for David Keller or Joseph Plummer.  Docs. 20–23.  That failure to serve does not affect the standing analysis in any event.

(citations omitted).  In other words, "subject matter jurisdiction is non-waivable." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).

A party therefore may move to dismiss for lack of subject matter jurisdiction at any point during a litigation. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3).  Even if all parties fail to address the issue, "the court can raise *sua sponte* subject[ ]matter jurisdiction concerns," *Nesbit*, 347 F.3d at 77, because "courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt." *Id.* at 76–77 (citing *Healthy City*, 429 U.S. at 278).  In addressing subject matter jurisdiction under Rule 12(b)(1), the Court "must take care not to reach the merits of a case . . . ." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) (quotation omitted) (quoting *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008)).  A dismissal is mandatory "[i]f the court determines at any time that it lacks subject[ ]matter jurisdiction." Fed. R. Civ. P. 12(h)(3).  In any case, the dismissal should be without prejudice. *Orthopedic*, 132 F.3d at 155–56 (citations omitted).

Article III's "case-or controversy requirement is satisfied only where a plaintiff has standing." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009) (quotation omitted) (first quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008); and then citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)). "In this manner does Art[icle] III limit the federal judicial power to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Id.* (quotations omitted) (first quoting *Valley Forge*, 454 U.S. at 472; and then citing *Flast v. Cohen*, 392 U.S. 83, 97 (1968)).

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Id.* at 257 (quotation omitted) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, (3d Cir. 2006)). A corollary is that the plaintiff, as the party invoking federal jurisdiction, "bear[s] the burden of establishing . . . standing." *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

Standing is founded on two sets of requirements. *Id.* at 257–59.

The first set is constitutional, and has the following three elements:

> (1) an injury in fact (*i.e.*, a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (*i.e.*, a "fairly traceable" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Id.* at 258 (first quoting *Sprint*, 554 U.S. at 273–74; then citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); and then citing *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 161 (3d Cir. 2007)).

Here, and reading the allegations in the Amended Complaint in the light most favorable to Wright, he potentially satisfies those prongs. Namely, Wright seemingly asserts that: (1) his injury lies in the deprivation of his property rights under the Fifth and Fourteenth Amendments; (2) the defendants' acts causing that injury; and (3) the injury may be redressed by monetary and punitive damages. Doc. 11 at 1–5.

Wright's precise relationship to and ownership interest in the underlying property remains murky. As the Court previously observed, "Wright appears to have retained no ownership interest" in the disputed

property, Doc. 38 at 12, and he admits that he resides outside of Pennsylvania, where the property is located. Doc. 11 at 3. Wright does aver, however, that the defendants "depriv[ed] Thomas Wright, adolph wright[,] and other heirs" of their property interests, *id.*, and the Court determined that he was once a "tenant[] in common." Doc. 38 at 3–4. Thus, absent further development of the record, the Court cannot decisively state that Wright has failed to establish constitutional standing.

The second set of requirements—prudential standing—yields a different conclusion. Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Among such prudential restrictions is "the general prohibition on a litigant's raising another person's legal rights." *Common Cause of Pa.*, 558 F.3d at 258 (first quoting *Elk Grove*, 542 U.S. at 12; then citing *Valley Forge*, 454 U.S. at 474–75; and then citing *Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 209 (3d Cir. 2007)). "It is a well-established tenet of standing that a 'litigant must

assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 (2002) (first quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991); then citing *Valley Forge*, 454 U.S. at 474–75; and then citing *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994)).

At the same time, federal "jurisprudence recognizes third-party standing under certain circumstances." *Id.* (footnote omitted) (first citing *Campbell v. Louisiana*, 523 U.S. 392, 397–98 (1998); and then citing *Hodel v. Irving*, 481 U.S. 704, 711 (1987)). "[T]he principles animating the[] prudential concerns are not subverted if the third party is hindered from asserting its own rights and shares an identity of interests with the plaintiff." *Id.* (first citing *Craig v. Boren*, 429 U.S. 190, 193–94 (1976); then citing *Singleton v. Wulff*, 428 U.S. 106, 114–15 (1976) (plurality opinion); and then citing *Eisenstadt v. Baird*, 405 U.S. 438, 443–46 (1972)).

To establish third-party standing, the plaintiff must satisfy "three preconditions: 1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a 'close relationship'; and 3) the third party must

face some obstacles that prevent it from pursuing its own claims." *Id.*
(first citing *Campbell,* 523 U.S. at 397; then citing *Powers,* 499 U.S. at
411; and then citing *The Pitts News v. Fisher*, 215 F.3d 354, 359 (3d Cir.
2000)).  Regarding the second element, the relationship must give the
third-party plaintiff "a sufficiently concrete interest in the outcome of
the issue in dispute and ensuring that the plaintiff will be an effective
advocate." *Pitt News*, 215 F.3d at 362 (quotations omitted) (quoting
*Powers*, 499 U.S. at 411).

As with the constitutional standing analysis, two of the three
prudential requirements arguably are met as well, when reading the
Amended Complaint in the light most favorable to Wright.  Namely,
Wright contends that he owned a partial legal interest in the property,
the taking of which, again, caused the alleged injury.  Doc. 11 at 3.  And
to the extent that Adolph is the appropriate third party, Wright was
determined to have once been a "tenant[] in common" with Adolph in
the underlying property.  Doc. 38 at 3–4.

But Wright fails to establish the third prudential consideration.
Specifically, the Amended Complaint does not explain how Wright's
brother, Adolph, faces obstacles that prevent him from pursuing his

own remedies.  Indeed, given that Adolph was the individual ejected from the property and that Wright resides in another state, *id.* at 3, the Amended Complaint triggers the question of why Wright, not Adolph, is pursuing this action.

In such a situation, dismissal for lack of jurisdiction is the appropriate action.  *See Pitts News*, 215 F.3d at 363 (explaining that, "[i]n most cases" where the plaintiff fails to "demonstrate[] that [the absent party] ha[s] any impediment to bringing [his or her] own suit[,]" warrants conclusion that "the plaintiff could not assert third party standing.").  Accordingly, because Wright failed to establish his third-party standing, the undersigned recommends that this action be dismissed without prejudice for lack of jurisdiction.  *See id.*; *Orthopedic*, 132 F.3d at 155–56.

## 2.    Rooker-Feldman *Doctrine*

The overall genesis of Wright's Amended Complaint appears to be anchored in the injuries caused to Adolph by a state tax judgment, which was issued about two years before this instant suit was filed.  *See generally* Doc. 11.  Wright appears to be prodding the Court into reviewing and even interfering with that judgment.  *Id.*  To the extent

Wright seeks to overturn that state tax judgment through this federal action, the Court lacks corresponding jurisdiction; a determination that may be made sua sponte. *Nesbit*, 347 F.3d at 77.

Another limitation on federal jurisdiction, the *Rooker-Feldman* doctrine, bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quotation omitted) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). Put simply, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Id.* at 165.

The *Rooker-Feldman* doctrine has four requirements: (1) the federal plaintiff must lose in a state-court judicial proceeding; (2) the state-court judgment or decree must be rendered before the federal action was filed; (3) the federal plaintiff must invite the review and rejection of the state-court judgment; and (4) the federal plaintiff must

complain of injuries caused by the state-court judgment. *Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023) (first citing *Exxon*, 544 U.S. at 284; and then citing *Great W.*, 615 F.3d at 166).

Even assuming that Wright could establish third-party standing in lieu of Adolph, any attempt to overturn the underlying state court tax judgment would run afoul of the *Rooker-Feldman* doctrine. That judgment, entered against Adolph on June 16, 2021, *see Wright*, 2024 WL 5195484, at *1, fulfills the first prong. The second element, too, is met, since a state court issued the judgment about two years before Wright filed this suit on April 7, 2023. Doc. 1. And as Wright seemingly complains about the injuries caused by the tax judgment and seeks federal review and rejection of the state tax judgment through this purported takings action, the remaining two requirements are satisfied as well.

The conclusion that federal jurisdiction is divested under the *Rooker-Feldman* doctrine in purported challenges to a state tax decision has been recognized throughout the Third Circuit. *See, e.g., Kepoint Pres. Trust Org. ex rel Brown v. Fisher*, 173 F. App'x 191, 194 (3d Cir. 2006) (per curiam) (affirming dismissal of claim that real estate

transfer taxes violated Contracts Clause); *Deeck v. Singer*, 2024 WL 3889097, at *3 (E.D. Pa. 2024) (recognizing that "plaintiff impermissibly challenging a state-court judgment may do so directly[] by expressly asking a federal court to alter or overturn the judgment, or indirectly[] by asking the federal court to afford relief that in some way nullifies or invalidates the state-court judgment."); *Kuznicki v. Nat'l Church Residences of Penn Hills*, 2024 WL 129842 (W.D. Pa. 2024) (noting that federal courts "cannot directly or indirectly review, negate, void or provide relief that would invalidate" state court judgments); *see also Labossiere v. PHH Mortg. Corp.*, 2022 WL 1044965, at *2 (D.N.J. 2022) (declaring that attacks against foreclosures may be dismissed "[i]rrespective of how . . . Plaintiffs label their claims or how they attempt to disguise their opposition or . . . Complaint"); *Silverberg v. DuPont de Nemours Inc.*, 2024 WL 4566110, at *13 (E.D. Pa. 2024) (collecting cases).

Therefore, even if standing were not an issue, any request by Wright that the Court overturn the state court tax judgment against Adolph warrants dismissal without prejudice, as the Court lacks

jurisdiction over this matter under the *Rooker-Feldman* doctrine. *See* Fed. R. Civ. P. 12(h)(3); *Orthopedic*, 132 F.3d at 155–56.

## B.    Failure to Serve

The undersigned further recommends that David Keller and Joseph Plummer be dismissed without prejudice for Wright's failure to serve process on those two defendants. On July 22, 2024, 124 days after the filing of the Amended Complaint, Wright was ordered to serve the pleading on all defendants by August 5, 2024, and provide proof of service, accordingly. Doc. 17. Wright failed to comply with that order, prompting the Court to issue another order to serve by September 3, 2024. Doc. 19. He subsequently provided proof of service for some defendants, but not for Keller or Plummer.[7] Docs. 20–23. That failure alone would warrant dismissal of those unserved defendants, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

The Court of Appeals "ha[s] warned plaintiffs of the severity of Rule 4(m): 'Treat the [90] days with the respect reserved for a time

---

[7] On January 22, 2025, the Honorable William I. Arbuckle ordered Wright to respond to one of the motions to dismiss, and directed the Clerk's Office to mail a copy of his order to, among others, Keller. Doc. 40. Subsequently, on July 8, 2025, Keller lodged his own motion to dismiss. Doc. 53. But, to date, Wright has failed to effect proper service on Keller, as indicated by the absence of a proof of service and Keller's motion to dismiss. *Id.* at 1.

bomb.'" *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1307 (3d Cir. 1995) (quoting *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987)).  Rule 4(m) establishes that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Alternatively, if the plaintiff provides some explanation for the delayed service but "good cause has not been shown, . . . the court still *may* grant the extension in the sound exercise of its discretion." *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998) (emphasis added) (first citing *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995); and then citing *Petrucelli*, 46 F.3d at 1305); *see also Snyder v. Swanson*, 371 F. App'x 285, 286 (3d Cir. 2010) (quoting *Petrucelli*, 46 F.3d at 1305) ("If good cause does not exist, the District Court has discretion . . . to dismiss the complaint without prejudice . . . .").

"Courts consider 'three factors in determining the existence of good cause under Rule 4(m): (1) reasonableness of plaintiff's efforts to

serve[;] (2) prejudice to the defendant by lack of timely service[;] and (3)

whether plaintiff moved for an enlargement of time to serve.'"

*Beautyman v. Laurent*, 829 F. App'x 581, 583 (3d Cir. 2020) (alterations

in original) (citations omitted).  In this analysis, "the primary focus is

on the plaintiff's reasons for not complying with the time limit in the

first place." *MCI*, 71 F.3d at 1097.  Regarding the second consideration,

"absence of prejudice alone can never constitute good cause to excuse

late service." *Id.*  Also, for the third factor, the plaintiff's failure to "ask

any court for an extension of time before the time allotted under the

Rules had lapsed" may be fatal to a motion for enlargement of time.

*McCurdy*, 157 F.3d at 196.

Even without good cause, Third Circuit courts "must consider

whether any other factors[8] warrant extending time even though good

cause was not shown." *Petrucelli*, 46 F.3d at 1307.  Of course, neither

---

[8] Recognized examples include: (1) the timeliness of a motion for extension,
*Beautyman*, 829 F. App'x at 584; (2) the plaintiff's (a) pro se status, *Cain v. Abraxas*,
209 F. App'x 94, 96 (3d Cir. 2006), (b) familiarity with litigation, *Snyder*, 371 F.
App'x at 287, (c) response after receipt of a document regarding faulty service, *id.*,
or (d) repeated failure to provide a correct address, *Meade v. Reynolds*, 310 F. App'x
86, 89 (3d Cir. 2020); (3) the applicable statute of limitations, *Abraxas*, 209 F. App'x
at 96; (4) the lack of proof of service, *Ideen v. Straub*, 613 F. App'x 117, 119 (3d Cir.
2015); (5) the "actual notice of the legal action," *Chiang v. U.S. SBA*, 331 F. App'x
113, 116 (3d Cir. 2009); and (6) the potential "prejudice to the defendant." *Id.*
These factors may be balanced against one another.  *Id.*

"[r]eliance upon the Clerk's advice," *Veal*, 84 F. App'x at 256, nor

"[f]ailure to understand Rule 4(m) do[] not excuse [the plaintiff's] failure

to provide timely service." *Cain*, 209 F. App'x at 96 (citation omitted).

Ultimately, the Court may not find a good cause without a rationale.

*MCI*, 71 F.3d at 1097–98 (citing *Braxton*, 817 F.2d at 242).

Here, Wright has failed to serve process on both Keller and

Plummer, for no apparent reason.  Over two years have passed since

this action's commencement, Doc. 1, and one year since the filing of the

Amended Complaint.  Doc. 11.  And, again, the Court exercised its

discretion twice by notifying Wright of his failure to serve.  Docs. 17, 19;

*see also McCurdy*, 157 F.3d at 196.  But Wright has yet to provide a

rationale for his failure to serve process on Keller and Plummer.

Indeed, Keller even avers that he contacted Wright and requested

service of the complaint, the docketed version of which is only partially

legible, to no avail.  Doc. 53 at 1–2.

Absent sufficient explanation from Wright, the Court cannot find

good cause for granting another extension.  *See MCI*, 71 F.3d at 1097–

98.  That failure alone warrants dismissal of those unserved

defendants, without prejudice, pursuant to Federal Rule of Civil

Procedure 4(m). *See Rouse v. City of Pittsburgh*, 2018 WL 3209430, at

*16–17 (W.D. Pa. 2018) (dismissing six unserved defendants), *report*

*and recommendation adopted*, 2018 WL 2325731 (W.D. Pa. 2018); *see*

*also Victorin v. Jones Lang LaSalle*, 2021 WL 651200, at *5–6 (D.N.J.

2021) ("a court cannot ignore a defendant simply because that

defendant was not yet served." (discussing diversity jurisdiction)).

## IV.    Recommendation

Accordingly, it is **RECOMMENDED** that:

1.    The motion to dismiss Defendants Luzerne County Solicitor,
Harry Skene, Luzerne County Council, Tim McGinley, Lee
McDermott, Kendra Radle, David Pedri, Chris Perry, Sheila
Saidman, and Robert Schnee (Doc. 24) be **GRANTED**, and
those Defendants be **DISMISSED WITHOUT
PREJUDICE**;

2.    The motions to dismiss Defendants Elite Revenue Solutions,
LLC; Luzerne County Tax Claim Bureau; and Samuel
Falcone (Docs. 44, 45) be **GRANTED**, and those Defendants
be **DISMISSED WITHOUT PREJUDICE**;

3.    The motion to dismiss Defendant David Keller (Doc. 53) be **GRANTED**, and that Defendant be **DISMISSED WITHOUT PREJUDICE**;

4.    Defendants Joan Hoggarth, James Haddock,[9] and Joseph Plummer be **DISMISSED WITHOUT PREJUDICE**;

5.    Wright be given 21 days to submit an amended complaint, with the caveat that illegibility caused by cropping may be a cause for dismissal;[10] and

6.    The Clerk's Office be **DIRECTED** to **TERMINATE** all Defendants in this case.

All parties are further placed on notice that, pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties,

---

[9]  Hoggarth and Haddock are not named in any of the motions to dismiss. The undersigned's jurisdictional reasons for recommending dismissal, however, also applies to those two individuals.

[10]  *See, e.g., Moss v. United States*, 329 F. App'x 335, 335–36 (3d Cir. 2009) (per curiam) (affirming dismissal that was partly based on complaint's illegibility); *Tucker v. Monroe*, 314 F. App'x 433, 434–36 (3d Cir. 2008) (per curiam) (same).

written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

M.D. Pa. L.R. 72.3. The failure to file timely objections to the foregoing

Recommendation may constitute a waiver of any appellate rights. *See*

*Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007).

Date: August 25, 2025          ***s/ Phillip J. Caraballo***
                               Phillip J. Caraballo
                               United States Magistrate Judge

26